UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER R., <br><br> Plaintiff, <br><br> v. <br><br> LELAND DUDEK, Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: 24-cv-30-KSC <br><br> **ORDER REVIEWING FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** |

Plaintiff filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for benefits. Doc. No. 1. This Court directed the parties to explore informal resolution of the matter through the meet-and-confer process, but the parties were unable to resolve the case on their own. Doc. Nos. 11, 12. Having reviewed the parties' briefing and the Administrative Record ("AR"), the Court vacates the decision of the Commissioner in this matter and remands for further proceedings as stated in this Order.

////

////

////

////

# I. BACKGROUND

Plaintiff applied for Disability Insurance Benefits on June 21, 2019. AR 276-282.[1] The Social Security Administration initially denied the claim on January 14, 2020. AR 151-55. On April 23, 2020, The Administration denied plaintiff's claim upon rehearing. AR 159-71. On June 24, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 172-73. Plaintiff, represented by counsel, appeared before the ALJ on March 1, 2022. AR 47-80. Plaintiff's attorney and the ALJ both examined plaintiff at the hearing, and the ALJ received testimony from a vocational expert. *See id.* After reviewing the documentary evidence in the record and hearing the witnesses' testimony, the ALJ denied plaintiff's claim for benefits. AR 41.

The ALJ's decision followed the five steps prescribed by applicable regulations under which the ALJ must sequentially determine (1) if the claimant is engaged in substantial gainful employment; (2) whether the claimant suffers from a "severe" impairment; (3) if any impairment meets or is medically equal to one of the impairments identified in the regulatory Listing of Impairments; (4) the claimant's residual functional capacity ("RFC") and whether the claimant could perform any past relevant work; and (5) whether a claimant can make an adjustment to other work based on his or her RFC. *See* 20 C.F.R. § 404.1250(a)(4); AR 26-28. The ALJ's evaluation ends if at any individual step the ALJ finds the claimant is disabled. *See* 20 C.F.R. § 404.1250(a)(4).

Prior to beginning the five-step evaluation process, the ALJ first established plaintiff's date last insured ("DLI") was September 30, 2018. AR 28. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since December 2, 2015, the alleged onset date of plaintiff's disability. *Id.* At step two, the ALJ found plaintiff had the following severe impairments: "degenerative disc disease, schizophrenia, bipolar disorder, and anxiety disorder." *Id.* The ALJ also found plaintiff had the following non-severe

---

[1] The Court adopts the parties' citations to the certified record in this matter. All other citations reflect pagination assigned by the Court's CM/ECF case management system.

impairments: "hypertension, atrial fibrillation, obstructive sleep apnea, and near obesity/obesity." *Id.*

At step three, the ALJ found none of plaintiff's impairments, alone or in combination, met or equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). AR 29-31. At step four, the ALJ found plaintiff had the following RFC:

> [P]erform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except: lift, carry, push, and pull 50 pounds occasionally, and up to 25 pounds frequently; stand and/or walk 6 hours, and sit 6 hours, in an 8-hour workday with normal breaks; frequently climb ramps and stairs; occasionally climb ropes, ladders, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme cold, extreme heat, vibration, and hazards including unprotected heights and dangerous moving machinery. The claimant is further limited to understanding, remembering, and carrying out simple, routine, repetitive tasks, with breaks every two hours; to no interaction with the general public; and to occasional interaction with co-workers and supervisors. The claimant is unable to perform fast-paced work. The claimant should be put in a low stress environment; one where there are few workplace changes.

AR 30. The ALJ did not evaluate plaintiff's ability to perform any past relevant work because the record contained "insufficient information" about plaintiff's work history. AR 39. At step five, the ALJ found plaintiff could work as a laundry worker II, hospital cleaner, or hospital food service worker based on the VE's testimony and the Dictionary of Occupational Titles ("DOT"). AR 40-41. Accordingly, the ALJ found plaintiff was not disabled. AR 41. This appeal followed. Doc. No. 1.

## **II. STANDARD OF REVIEW**

This Court will affirm the ALJ's decision if (1) the ALJ applied the correct legal standards; and (2) the decision is supported by substantial evidence. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under the substantial evidence standard, the Commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if there is evidence in the record to support more than one rational interpretation, the Court will defer to the Commissioner. *Id.*

Even if the ALJ makes an error, this Court can nonetheless affirm the denial of benefits if such error was "harmless, meaning it was 'inconsequential to the ultimate nondisability determination.'" *Ford v Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)). The Court's ability to uphold the ALJ's decision is limited in that this Court may not make independent findings and therefore cannot uphold the decision on a ground not asserted by the ALJ. *See Stout v. Comm'r of the Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

### III. ANALYSIS OF THE COMMISSIONER'S DECISION

Plaintiff tenders the following issues for the Court's review: "[w]hether the ALJ properly considered the evidence of mental functioning" and "[w]hether the ALJ properly considered the evidence of ability to perform other work." Doc. No. 16 at 4. The Court will address each issue in turn.

### (A) Whether the ALJ Properly Considered the Evidence of Mental Functioning

Although plaintiff's briefing lacks clarity, the substance of his argument here is that the ALJ erroneously discounted the opinion of Dr. Darren Lucas in favor of other medical opinions the ALJ found more persuasive. *See generally* Doc. No. 16 at 5-14. The Agency's 2017 regulations supply the current standard for evaluating competing medical opinions in the record. 20 C.F.R. § 404.1520c; *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022). Under the applicable regulations, an ALJ must evaluate the persuasiveness of any medical opinions and articulate his or her assessment as to each. 20 C.F.R. § 404.1520c.[2] In evaluating persuasiveness, an ALJ considers the medical opinions' supportability and consistency; and the ALJ may also consider the relationship between the source and the

---

[2] "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . ." 20 C.F.R. § 404.1513(a)(2).

4

claimant, the source's specialization, and other factors such as the source's knowledge of other evidence, social security requirements, and whether there was subsequently submitted evidence. *See* 20 C.F.R. § 404.1520c(1)-(5).

Although an ALJ *may* discuss each of the factors to be considered in his or her opinion, the regulations only *require* the ALJ to explain how he or she considered the most important factors—supportability and consistency—when determining a medical opinion's persuasiveness, unless two conflicting medical opinions are both equally well-supported and consistent with the record, in which case the ALJ will use the other factors as a kind of tie-breaker. 20 C.F.R. § 404.1520c(b)(2)-(3). Under the regulations, "supportability" is the extent to which a source presents relevant objective medical evidence and explanations to support its opinion or finding. 20 C.F.R. § 404.1520c(c)(1), 416.920c(c)(1). The more relevant the evidence and explanations are, the more persuasive the opinion or finding will be. *See id.* "Consistency" is the extent to which an opinion or finding is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The more consistent it is with evidence from other sources, the more persuasive it will be. *See id.*[3]

The ALJ in this case considered the opinions of four different medical sources vis-à-vis plaintiff's mental impairments: Dr. Lucas, Dr. McIntyre, Dr. Kravitz, and Dr. Nicholson. *See* AR 36-39. At a very high level, the ALJ generally disregarded Dr. Lucas' opinion, which would have imposed restrictions on plaintiff wholly inconsistent with doing any work; while the ALJ generally accepted, at least in part, the other physicians' evaluations. *Id.* Plaintiff wants the Court to reverse that finding by crediting Dr. Lucas'

---

[3] These two inquiries focus on separate aspects of a medical opinion. The supportability analysis looks at the quality of the medical evidence that was in front of the treating physician (or other medical source) at the time he or she offered an opinion. In contrast, consistency evaluates a medical opinion against the weight of other evidence in the record, which evidence was not necessarily presented to the treating physician (or other medical source) at the time he or she offered an opinion.

opinion because it was "consistent with the history, nature of impairment, longitudinal record, and course of pharmacological treatment" and it had "a supportability component that is at least as good if not better than" the other doctors. Doc. No. 16 at 14. But the scope of this Court's review is limited to making sure the ALJ followed the correct rules and supported the decision with substantial evidence. *Woods*, 32 F.4th at 787-88. It is clear from the record in this case the ALJ made specific findings as to the persuasiveness of the four medical opinions at issue. *See* AR 36-39. Thus, the only thing the Court can do is determine whether the ALJ properly considered the opinions under the controlling regulations, which the Court can accomplish by reviewing the ALJ's assessment of each opinion. The Court cannot, as plaintiff asks, reassess the persuasiveness of each opinion.

### **(1) Dr. Lucas**

The ALJ found Dr. Lucas's opinion "not persuasive overall." As to supportability, the ALJ reasoned "Dr. Lucas had opportunities to examine the claimant" but he "offered minimal narrative support . . . for the excessive limitations" about which "he opined." AR 36. The ALJ also commented on how Dr. Lucas's opinion was based on "unspecified 'chart notes.'" *Id.* Dr. Lucas's chart notes (as well as charting notes from his colleagues at South Bay Guidance Wellness) appeared in the record in front of the ALJ in Exhibits B3F – B7F. *See* AR 547-86, 593-813. Because they represent the information that was in front of Dr. Lucas when he rendered his opinion, they directly bear on the supportability analysis. It was error for the ALJ not to consider them. Similarly, the ALJ was inconsistent in his supportability analysis with how he weighed the opportunity to examine the claimant. E.g., the ALJ appears to have not considered the fact that Dr. Lucas *did* examine the claimant as tending to make his opinion more supported in at least that aspect than the opinions of either Dr. McIntyre or Dr. Kravitz, neither of whom examined plaintiff. *See* AR 36-37. Moreover, the ALJ appeared to give more credit to Dr. Nicholson for having examined plaintiff than he did Dr. Lucas. *See* AR 36, 38-39. Finally, it is not clear how the ALJ's conclusion that Dr. Lucas did not provide a sufficient "narrative" factored into the ALJ's conclusions. In the abstract, the verbosity with which Dr. Lucas wrote his opinion (or the

6

24cv30

lack thereof) does not change the materiality of the evidence that went into forming that opinion. However, if the ALJ meant that it was not clear from Dr. Lucas's opinion exactly what information he considered, then the ALJ might reasonably make a negative supportability finding. If that is the case, the ALJ's decision to consider the "narrative" factor only as against Dr. Lucas was potentially erroneous since he did not consider the "narrative" strength of the other doctors' opinions, which would be a necessary step in determining which of the opinions had better support. Given the ALJ's failure to use the supportability factor consistently with regard to Dr. Lucas's examination and treatment of plaintiff, the Court concludes the ALJ failed to properly consider the supportability of Dr. Lucas's opinion.

As to consistency, the ALJ concluded Dr. Lucas's opinion was "not consistent with the record as a whole." AR 36. The ALJ based this conclusion on several factors: a lack of long-term periods of psychiatric hospitalization, improvement through better treatment compliance, and "objective mental/psychiatric statuses that have been relatively normal." AR 36-37. On the first point, courts have held that a benefits claimant need not be utterly and completely incapacitated by illness to qualify for benefits. *See, e.g.*, *Berry v. United States*, 312 U.S. 450, 455-56 (1941); *Potter v. Colvin*, 220 F. Supp. 3d 1066, 1072 (D. Ore. 2016); *Collier v. Celebrezze*, 240 F. Supp. 274, 276 (D. Idaho 1965). Although it might be true in this case that substantial evidence supports a finding that plaintiff has not suffered prolonged psychiatric hospitalization, the ALJ's conclusion begs the question of why that should be the standard for disability. The ALJ did not explain why a lack of hospitalization is inconsistent with the inability to work, and, therefore, that aspect of the ALJ's consistency analysis is not supported by substantial evidence.

As to the second point, evidence of successful medical treatment can indeed rebut evidence of disability. *See Wellington v. Berryhill*, 878 F.2d 867, 876 (9th Cir. 2017). Here, the ALJ did not clearly indicate which medical evidence in the record supported his conclusion that medication had been managing plaintiff's symptoms, so the Court is unable to properly evaluate the ALJ's conclusions. Even so, the Court notes the ALJ *did*

acknowledged that Dr. Lucas was plaintiff's treating physician, yet the ALJ did not really evaluate the chart notes from Dr. Lucas. If he had, the ALJ would have needed to account for the fact that Dr. Lucas was regularly adjusting plaintiff's medications to account for the fact that they were either not working or producing untenable side effects. *See, e.g.*, AR 649, 685, 691-92, 697-98, 701-02, 776-77, 782-86, 791-94, 797-98, 800-01, 806-13. Even before plaintiff was a patient of Dr. Lucas, the record shows that his prior treatment team was adjusting his medications because they had been ineffective, and eventually they had to send him to Dr. Lucas because plaintiff required a higher level of care than they could provide. *See* AR 468, 479, 494, 496. Given the unexplained inconsistency in the ALJ's analysis, this portion of the "consistency" prong was not supported by substantial evidence.

Finally, although the ALJ might have pointed to "objective" psychiatric statuses as inconsistent with Dr. Lucas' opinion, the ALJ cannot simply state an unsupported conclusion. *Cf. Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Here, the ALJ did not specifically identify what objective "statuses" showed plaintiff's psychiatric condition was normal. *See* AR 36-37. The Court cannot comb through the record to discern what the ALJ meant by "statuses" and which of them were inconsistent with Dr. Lucas's opinion because that would amount to substituting the Court's judgment for the judgment of the ALJ, which exceeds the Court's ability to review the record. Accordingly, the Court concludes the ALJ's conclusory statement, without identifying the actual inconsistent evidence with even a modicum of particularity, does not establish that Dr. Lucas' opinion was inconsistent with other evidence in the record. Overall, the ALJ did not properly evaluate the persuasiveness of Dr. Lucas' opinion.

**(2)   Dr. McIntyre**

Dr. McIntyre provided a mental assessment on January 11, 2020. *See* AR 92-94. The ALJ found Dr. McIntyre's opinion "somewhat persuasive." AR 37. As to supportability, the ALJ reasoned Dr. McIntyre "supported [his] opinion[] with a review of the broader file as it existed at the time," but "did not have an opportunity to examine" plaintiff. *Id.* As to

consistency, the ALJ reasoned Dr. McIntyre's opinion was "only partially consistent with the current record as a whole." *Id.*

The ALJ's supportability conclusion is flawed for two reasons. First, the ALJ was not clear on whether Dr. McIntyre's opinion was better supported than Dr. Lucas' opinion. Because Drs. Lucas and McIntyre both supported their opinions with a review of plaintiff's medical records, the ALJ needed to decide which of them had better support, not just say Dr. McIntyre's opinion was supported. It is not at all clear from the ALJ's decision that Dr. McIntyre had a more fulsome body of evidence in front of him. If the evidence before both doctors was not meaningfully distinguishable, the ALJ needed to look more closely at the opportunity (or lack thereof) to examine plaintiff, and maybe the tie-break factors as well.

The second flaw is that the ALJ's characterization of the medical records considered by Dr. McIntyre is unreasonable. The ALJ characterized Dr. McIntyre's opinion as supported by the "broader" record as it existed at the time. AR 37. Based on his report, Dr. McIntyre considered the following records related to mental health:

- A 3/19/19 psych assessment performed at South Bay Guidance Wellness;
- Dr. Lucas's 12/10/2019 progress notes;
- A Mental Status Exam ("MSE") performed at Logan Heights Family Health on 4/16/2018;
- An MSE performed at Logan Heights Family Health on 8/22/2018;
- An MSE performed at Logan Heights Family Health on 1/16/2019; and
- A psychiatric treatment plan dated 1/23/2019 from Logan Heights Family Health.

*See* AR 90. But this was not a complete picture of the "broader" record as it existed at the time. An ALJ cannot evaluate portions of the record in isolation, and a reviewing Court considers the plaintiff's case in light of the record as a whole. *See Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023). Although Dr. McIntyre considered *some* of Dr. Lucas' progress notes and the other records from South Bay Guidance Wellness, there were other records from that same source that existed at the time Dr. McIntyre provided his opinion that he did not consider. *See, e.g.*, AR 547-58, 574-81, 587-92. Similarly, Dr. McIntyre appears to have overlooked some of plaintiff's records from Logan Heights Family Health.

*See, e.g.*, AR 472-74, 475-77, 491-501, 506-09. Most troubling, the ALJ did not appear to consider the fact that plaintiff's treatment at Logan Heights Family Health reflected a history of psychiatric disorders with a "severe" clinical complexity, and Logan Heights Family Health actually referred plaintiff on to South Bay Guidance Wellness for a higher level of care. *See* AR 468, 472-74, 493-95, 502-05. Given these potentially important considerations for how well supported Dr. McIntyre's opinion was, the Court concludes the ALJ's evaluation of the supportability component was not supported by substantial evidence.

The ALJ's assessment of the consistency factor was identical to his assessment of Dr. Lucas's opinion: noting a lack of psychiatric hospitalizations, effective treatment, and "objective mental/psychiatric status" that were "relatively normal in general." AR 37. The Court has already rejected this analysis as insufficient regarding Dr. Lucas's opinions. The Court reaches the same conclusion as to Dr. McIntyre—the ALJ's evaluation of the consistency factors was not supported by substantial evidence in light of the record as a whole.

### (3) Dr. Kravitz

According to the ALJ, Dr. Kravitz "essentially affirmed" Dr. McIntyre's opinion on April 22, 2020. AR 37. The ALJ found Dr. Kravitz's opinion to be "somewhat persuasive." *Id.* As to supportability, the ALJ reasoned Dr. Kravitz "supported [his] opinion[] with a review of the broader file as it existed at the time," but "did not have an opportunity to examine" plaintiff. *Id.* As to consistency, the ALJ reasoned Dr. Kravitz's opinion was "only partially consistent with the current record as a whole." *Id.*

The ALJ's assessment of Dr. Kravitz's opinion is lumped together with the assessment of Dr. McIntyre's opinion. AR 37. Indeed, the analysis of both opinions is identical. *Id.* The same flaw in the "consistency" analysis applies here, and the Court will not repeat it. The "supportability" prong is similar in that the ALJ failed to consistently delineate how Dr. Kravitz's lack of a direct examination factored into the supportability analysis vis-à-vis Dr. Lucas, who *had* examined and treated plaintiff. As to the conclusion

that Dr. Kravitz supported his opinion with a review of the broader record, it appears that conclusion was not supported by substantial evidence because the *only* medical records on which Dr. Kravitz explicitly bases his opinion are the South Bay Guidance and Wellness documents reviewed by Dr. McIntyre with the addition of a single assessment from South Bay Guidance and Wellness. *See* AR 121-22, 124, 134-35, 137. Dr. Kravitz also erroneously noted Family Health Centers had "no current records" on plaintiff. *See* AR 122, 135. In fact, there are records from Family Health Centers. *See* AR 415-546, 814-865. This narrow snapshot of plaintiff's medical history that Dr. Kravitz considered, stripped of the context supplied by consideration of the record as a whole, is not substantial evidence favoring the ALJ's supportability determination.

### (4)    Dr. Nicholson

Dr. Nicholson provided his medical opinion on June 27, 2022, following a consultative examination requested by the Administration. AR 962. The ALJ found Dr. Nicholson's opinion "generally persuasive overall." AR 39. The ALJ noted Dr. Nicholson "supported the opinion primarily with an examination of the claimant without the review of the full longitudinal medical evidence." *Id.* The ALJ also noted the opinion was "not entirely consistent with the current record as a whole." *Id.*

The ALJ's supportability analysis is inconsistent in its treatment of the opportunity to examine plaintiff because the ALJ did not apparently distinguish between the one-time examination performed by Dr. Nicholson and the ongoing series of examinations performed by Dr. Lucas, the only other medical source who had directly examined plaintiff. Moreover, the ALJ seems to have treated Dr. Nicholson's opportunity to examine the plaintiff once as a plus, yet discounted Dr. Lucas's history of examining the plaintiff. The ALJ's conclusion that Dr. Nicholson's opinion was more persuasive than Dr. Lucas's does not make sense if the supportability factor was the same, i.e., based on examinations of the plaintiff, but the ALJ's ultimate conclusion on supportability was different, i.e., that Dr. Nicholson's opinion was better supported and more persuasive. The ALJ should have determined which examination record provided better support for the respective opinions.

If they were equally well supported, the ALJ should have considered the tie-breaking factors like the relationship with the claimant or the medical source's specialization. *See* 20 C.F.R. § 404.1520c(c)(3)-(5). This would be particularly appropriate in a case like this where two competing medical sources both examined the claimant, but one of them had an ongoing relationship and the other did not. Thus, the Court concludes the ALJ's supportability analysis was not supported by substantial evidence.

As to consistency, the ALJ's boilerplate finding, which was identical to the analysis provided for the other three doctors, was likewise inadequate and not supported by substantial evidence. The ALJ erred in his evaluation of Dr. Nicholson's opinion.

### **(5)** **Overall Problems with the ALJ's Comparison of Competing Medical Opinions**

The biggest error in the ALJ's comparison of the competing medical opinions is that it is not entirely clear the ALJ evaluated them against each other. Although the ALJ stated the level of persuasiveness he attributed to each opinion, which the regulations require, each assessment is a standalone conclusion. Moreover, it is not clear how the ALJ considered the supportability and consistency factors as between different opinions. Consider the consistency factor—the ALJ states various opinions were "not consistent" or "only partially consistent" or "not entirely consistent," yet he never stated whether the various medical opinions were more or less consistent than each other. As a matter of plain diction, "only partially consistent" and "not entirely consistent" are functionally equivalent statements unless and until the ALJ makes it clear which if those opinions he found *more* consistent. If, however, the consistency factor was the same, then the ALJ may have been required to use the tie-breaker factors. 20 C.F.R. § 404.1520c(c)(3)-(5).

The only unifying thread the Court can discern with the ALJ's consistency analysis is that the ALJ appears to have decided what he thought plaintiff's impairments were and then decided whether the doctor's opinions were consistent with the ALJ's assessment of plaintiff's impairments. Thus, when the Court considers the entirety of the ALJ's analysis, it appears the ALJ may have "succumb[ed] to the temptation to play doctor and make [his]

own independent findings." *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006). The line between properly incorporating medical evidence into an RFC analysis and surreptitiously offering improper medical opinions is not always clear. *See Gwen M. v. O'Malley*, 23-cv-1562-KSC, 2024 WL 3888906, 2024 U.S. Dist. LEXIS 151931, at *14-15 (S.D. Cal. Aug. 21, 2024). However, here, without the benefit of the aforementioned analysis, it appears the ALJ looked at the plaintiff's medical records and reached his own conclusions about whether the doctors were correct.

The ALJ also failed to state which opinions were more well supported versus which opinions were less well supported. As the Court has explained at length, the ALJ appears to have done nothing more than note *how* each medical source supported a given opinion. But this is not sufficient because is not clear to the Court which opinions were supported well and which were poorly supported. The ALJ cannot satisfy the obligation to evaluate competing medical sources by simply noting, in the most general sense, that they were supported. The difference is between a true evaluation versus an empty recitation of the rule. The ALJ failed to provide the former. The Court, therefore, concludes the ALJ's assessment of the medical source evidence was legally erroneous and not supported by substantial evidence.

### (6) Whether the Error Was Prejudicial

The ALJ's assessment of plaintiff's mental functioning depended heavily on whether he believed Dr. Lucas (who opined plaintiff was disabled) or the other doctors (who opined plaintiff could work). Thus, the error in evaluating the competing medical opinions was not harmless. The appropriate remedy here would be a remand so the ALJ could correctly determine the impact of plaintiff's mental impairments in the first instance. *See Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2016).

### (B) Whether the ALJ Properly Considered the Evidence of Plaintiff's Ability to Perform Other Work

Part of the ALJ's RFC assessment limited plaintiff to "no interaction with the general public" and "occasional interaction with co-workers and supervisors." AR 32. The RFC

also required plaintiff "be put in a low stress environment; one where there are few workplace changes." *Id.* Plaintiff argues these limitations in his step-four RFC are incompatible with performing unskilled work. Doc. No. 16 at 22-26. More specifically, he argues there are unresolved conflicts between the standards for "unskilled work" found in the Administration's Program Operations Manual System ("POMS") and Dictionary of Occupational Titles ("DOT").

### **(1) Whether Plaintiff's RFC Conflicts with the POMS**

Plaintiff argues the mental limitations incorporated into plaintiff's RFC are inconsistent with the Administration's rules for which skills are "critical to performing unskilled work" as specified in the POMS. Doc. No. 16 at 22. "Although not binding law" the POMS "is persuasive authority." *Buck v. Berryhill*, 869 F.3d 1040, 1050-51 (9th Cir. 2017). Per POMS DI 25020.010(B)(3), the section on which plaintiff relies, to be capable of performing unskilled work, a benefits claimant must be able to, among other things, "[w]ork in coordination with or proximity to others without being (unduly distracted) by them . . . [a]sk simple questions or request assistance . . . [a]ccept instructions and respond appropriately to criticism from supervisors . . . get along well with coworkers or peers without unduly distracting them or exhibiting behavioral extremes" and "respond appropriately to changes in a (routine) work setting." *See* Doc. No. 16 at 23.[4] Although it is not clear from the parties briefing or the case law whether an unresolved apparent conflict between the POMS and the plaintiff's RFC would actually constitute a legal error by an ALJ, the Court need not resolve that question because, in this case, there is no conflict.

Plaintiff's RFC may limit his interactions with coworkers and supervisors to an "occasional" basis, but that finding by the ALJ does not preclude plaintiff from getting along with his colleagues and not being distracted by (or distracting) them during those occasional interactions. It is also possible that plaintiff can accept instructions and criticism

---

[4] The section in question is at https://secure.ssa.gov/poms.NSF/lnx/0425020010.

1  from his supervisors, as long as those instructions and criticism are given during only
2  "occasional" interactions. Similarly, plaintiff can be limited to "few workplace changes"
3  and respond appropriately to them. Plaintiff's RFC and the POMS guidelines for the mental
4  demands of unskilled work are, therefore, not mutually exclusive. The ALJ committed no
5  error on this ground.

### (2) Whether Plaintiff's RFC Conflicts with the DOT

The ALJ found plaintiff could, consistent with the job descriptions given in the DOT, work as a laundry worker II, hospital cleaner, or hospital food service worker. AR 40-41. Plaintiff contends his RFC (specifically the limitation to "few workplace changes") conflicts with the DOT's mental "reasoning" demands for the occupations the ALJ identified. Doc. No. 16 at 24. ALJ's must indeed resolve "apparent" conflicts with the DOT. *See Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). But there is no conflict between a limitation to "few workplace changes" and working in an occupation that requires "reasoning level 2" per the DOT. *See Stiffler v. O'Malley*, 102 F.4th 1102, 1108-10 (9th Cir. 2024).

Plaintiff's RFC in this case limited him to "few workplace changes." AR 32. It is not disputed that two of the three occupations listed in the DOT required level 2 reasoning. Doc. No. 16 at 26, 32.[5] *Stiffler* clearly dictates this Court cannot find an error based on this supposed "conflict." Plaintiff does not attempt to distinguish the controlling authority. Rather, he argues *Stiffler* was wrongly decided under various legal doctrines of general applicability. *See* Doc. No. 16 at 33-35. This Court has no authority to second-guess the correctness of the Ninth Circuit's decisions, so this argument is unpersuasive. *Stiffler* binds

---

5   Defendant concedes the ALJ erroneously failed to resolve a conflict between plaintiff's RFC and an occupation requiring reasoning level 3. Doc. No. 16 at 31. This error was "inconsequential" because the other two occupations only required level 2 reasoning, so it was therefore harmless error. *See Ford v Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

this Court and cannot be distinguished. The ALJ made no error by finding plaintiff could work in an occupation requiring reasoning level 2.⁶

### IV. CONCLUSION

The final decision of the Commissioner in this matter is vacated. The matter is remanded to the agency. On remand, the ALJ shall reevaluate the evidence of plaintiff's mental impairments and issue a new decision consistent with this Order. The Clerk of Court shall enter judgment for plaintiff and close the case.

Dated: March 26, 2025

Hon. Karen S. Crawford
United States Magistrate Judge

---

⁶ The Court's conclusion here is, of course, cabined by the RFC as found by the ALJ. If the ALJ's assessment of plaintiff's RFC changes on remand after reweighing the evidence of plaintiff's mental impairments, the ALJ should reevaluate whether plaintiff is capable of performing any occupation listed in the DOT.

16

24cv30